**In re Charles D. BROWN, Debtor.**

**Bankruptcy No. 09–60171.**

United States Bankruptcy Court, D. Minnesota.

July 12, 2009.

Jeffrey D. Skonseng, Krekelberg & Skonseng, Fergus Falls, MN, for Debtor.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on the Chapter 7 Trustee's motion objecting to property claimed exempt. The debtor opposes the motion.[1] Gene W. Doeling, the Chapter 7 Trustee, appeared on behalf of himself. Jeffrey D. Skonseng appeared on behalf of the debtor. At the conclusion of the hearing, the Court allowed the parties time to submit supplemental briefs. The Court being now fully advised makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I. FACTS

The facts in this controversy are straight forward and not in dispute. Brown claims a homestead exemption in the amount of $30,400, reflecting one-half of the equity, in real property located at 12464 Shorewood Beach Road, Detroit Lakes, Minnesota. Brown has resided and continues to reside upon the property since 1998 together with the legal title holding owner of the property, Cindy Dibley. He has made payments since they

---

1. In responsive papers, the debtor also requested, in the alternative, dismissal of the case. However, at the hearing, the debtor conceded lack of cause and withdrew the motion to dismiss.

first obtained the property in 1998, and he continues to make payments toward ownership and expenses of the property.

On February 15, 2007, Dibley deeded her interest in the property to Brown and herself as tenants in common to legally memorialize their individual half interest in the property. On January 22, 2009, as part of a refinance transaction, Brown transferred his half interest to Dibley by quit claim deed, solely in order for Dibley to qualify on her own (and without his poor credit) for a better interest rate. Brown did not, as part of the refinance and quit claim deed, formally retain an interest in the property such as a life estate or remainder. Brown filed a petition under Chapter 7 on February 23, 2009.

Brown and Dibley understand and agree that they have always owned the property together, and continue to own the property together, as tenants in common.

The Chapter 7 trustee argues that the claimed homestead exemption must be disallowed because Brown conveyed his interest to Dibley pre-petition and retains no legal or equitable interest in the property. Brown contends that he holds an equitable ownership interest in the property under the applicable state law of constructive trust.

■ The issue, therefore, is whether Brown's financial contributions to the ownership and expenses of the property, together with his occupancy of the property and the legal title holder's express belief and agreement that Brown holds the property as a tenant in common, establish a constructive trust and equitable ownership interest in the property sufficient to allow the claimed homestead exemption. For

the reasons set forth below, the Court holds that Brown has an equitable ownership interest in the property and that the exemption must be allowed.

## II. DISCUSSION

■ "State law governs the resolution of property rights within a bankruptcy proceeding and, therefore, Minnesota law governs this case." See *In re Farr*, 407 B.R. 343, 346, 2009 WL 1577649, *2, n. 5 (8th Cir. BAP 2009), citing *In re MJK Clearing, Inc.*, 371 F.3d 397, 401 (8th Cir. 2004).

Minnesota Statute 510.01 provides:

510.01. Homestead defined; exempt; exception

The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants and as is provided in section 550.175.

*See* Minn.Stat. Ann. § 510.01 (2002).

■ "The ownership requirement for a homestead exemption is liberally defined." *See In re Stenzel*, 301 F.3d 945, 947–948 (8th Cir.2002). "Any interest in the land, whether legal or equitable, shall constitute ownership." *Id.*, citing, Minn.Stat. § 510.04.[2]

---

2. Minnesota Statute § 510.04 provides:

510.04. Title may be in either spouse; equitable title exempt

If the debtor be married the homestead title may be vested in either spouse, and the exemption shall extend to the debts of either or of both. Any interest in the land, whether

In *Ramette v. Digital River, Inc. (In re Graphics Technology, Inc.)*,[3] the Eighth Circuit Bankruptcy Appellate Panel explained:

Under Minnesota law, a court may impose a constructive trust only when there is clear and convincing evidence that a constructive trust is necessary to prevent unjust enrichment and whenever legal title to property is obtained through fraud, oppression, duress, undue influence, force, crime, or similar means, or by taking improper advantage of a confidential or fiduciary relationship. *In re Estate of Eriksen*, 337 N.W.2d 671, 674 (Minn.1983) (citing *Knox v. Knox*, 222 Minn. 477, 25 N.W.2d 225, 228 (1946)); *Bly v. Gensmer*, 386 N.W.2d 767, 769 (Minn.App.1986)

Unjust enrichment occurs when a claim is based on the failure of consideration, fraud, mistake, and in other situations where it would be morally wrong for one party to enrich himself at the expense of another. *Cady v. Bush*, 283 Minn. 105, 166 N.W.2d 358, 361–362 (1969). To show unjust enrichment, however, more is required than a mere benefit to one party—"it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn.App.2001) (quoting *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981)).

See *Ramette v. Digital River, Inc. (In re Graphics Technology, Inc.)*, 306 B.R. 630, 636–37 (8th Cir. BAP 2004), aff'd 113 Fed. Appx. 734 (8th Cir.2004)

The BAP recently, and thoroughly, revisited Minnesota's constructive trust doctrine in the case of *In re Farr*, 407 B.R. 343 (8th Cir. BAP 2009):

[W]e start with the Minnesota Supreme Court's decision in *Henderson v. Murray*, 108 Minn. 76, 121 N.W. 214 (1909) which held: [W]here a party obtains the legal title to land by fraud or bad faith, or by taking advantage of confidential or fiduciary relations, or in any other unconscientious manner, so that he cannot justly retain the property, equity will impress a constructive trust upon it in favor of the party who is equitably entitled to it. Such trusts for convenience are termed ex maleficio or ex delicto, and are practically without limit. *Id.* at 216 (citation omitted), noting that "Ex maleficio" is defined as "[b]y malfeasance" or "[t]ortious," and that "Ex delicto" is defined as "[a]rising from a crime or tort." Black's Law Dictionary (8th ed.2004). Both contemplate wrongdoing. This language certainly contemplates some wrongdoing on the party in possession of the property before a constructive trust will be imposed.

However, some later Minnesota cases . . . have used language which has blurred *Henderson v. Murray's* otherwise clear message. For example, in *Knox v. Knox*, the Minnesota Supreme

---

legal or equitable, shall constitute ownership, within the meaning of this chapter, and the dwelling house so owned and occupied shall be exempt, though situated on the land of another.

**3.** The trustee's reliance on *In re Levy*, 185 B.R. 378, 386–387 (Bankr.S.D.Fla.1995), is misplaced because the analysis is under Florida law and materially distinguishable on its facts. In *Levy*, the transfer was made to a partner in an unmarried relationship, but the conveyance was based upon an antecedent debt. *Levy*, 185 B.R. at 386–387 (with the transfer of an interest in one's homestead to a creditor, the debtor conveys that property, and any interest therein, to a specific creditor . . . retains no interest, either legal or equitable, in the property . . . [and] abandons the claim to homestead).

Court said that "fraud, in its true sense, need not even be present," and that "it is not even necessary that a fiduciary relation should exist" for a constructive trust to be imposed. *Knox v. Knox*, 222 Minn. 477, 25 N.W.2d 225 (Minn.1946). Further: The nature of a constructive trust can best be comprehended by keeping clearly in mind that it is not, in its true sense, a trust at all, but purely a creation of equity designed to provide a remedy for the prevention of unjust enrichment where a person holding property is under a duty to convey it to another to whom it justly belongs. A court of equity, in decreeing a constructive trust, is bound by no unyielding formula, but is free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey would result in unjust enrichment.... Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises. *Id.* (citations and internal quotation marks omitted).

In *Thompson v. Nesheim*, the Minnesota Supreme Court held that a specific agreement to reconvey the property to the rightful owner is not necessary, reiterating that "[a] court of equity, in decreeing a constructive trust, is bound by no unyielding formula, but is free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey would result in unjust enrichment." *Thompson v. Nesheim*, 280 Minn. 407, 159 N.W.2d 910 (Minn.1968).

In *Iverson v. Fjoslien*, the Minnesota Supreme Court repeated that "a con-structive trust is an equitable remedy and that no unyielding formula is required to create such a trust. A court of equity may do so wherever unjust enrichment would otherwise result." *Iverson v. Fjoslien*, 298 Minn. 168, 213 N.W.2d 627 (Minn.1973).

And, in 1983, the Minnesota Supreme Court said in *In re Estate of Eriksen*, that "fraud need not be present in order to impose a constructive trust." Rather, "[t]he court must only be persuaded by clear and convincing evidence that the imposition of a constructive trust is justified to prevent unjust enrichment." *In re Estate of Eriksen*, 337 N.W.2d 671 (Minn.1983).

See *In re Farr*, 407 B.R. 343 (8th Cir. BAP 2009).

In *Farr*, the BAP was concerned with whether "under Minnesota law, a mistake can form the basis for imposing a constructive trust, or whether the concept requires something more than a mistake, such as wrongful conduct on the part of the person against whom the trust is sought." The court concluded that a mistake alone is not sufficient for the imposition of a constructive trust.

The court explained that "despite the broad language in these cases, and the Minnesota Supreme Court's pronouncement that 'fraud in its true sense' and 'fiduciary relation' need not be present ... in none of those cases ... did the Supreme Court actually impose a constructive trust based on a mere mistake." *Farr*, 407 B.R. 343. "Rather, in these cases, the Supreme Court only imposed constructive trusts in situations where there was indeed some wrongdoing or a breach of a fiduciary or confidential relationship, or where the disputed property was agreed by the parties to be jointly owned despite the title." *Id.*[4]

---

4. *In re Farr*, 407 B.R. 343, citing *Knox*, 222 Minn. 477, 25 N.W.2d 225 (husband had con-

The BAP in *Farr* discussed the significance of the *Eriksen* case, a matter factually similar to the Brown and Dibley situation presently at bar:

> In *Eriksen*, an unmarried couple bought a house together, but titled it in only the man's name because the woman had not yet obtained a divorce from her husband and because it would have caused her to lose governmental assistance benefits. When the man died, the court imposed a constructive trust on half of the house for the benefit of the woman because she had contributed equally to the acquisition and maintenance of the home, and because the parties had agreed to joint ownership. Thus, the Court held, failure to award her one-half interest in the home would result in unjust enrichment to the man's probate estate. Although *Eriksen* did not involve an allegation of fraud or misconduct, it similarly did not involve any mistake.

> In considering another case in which a constructive trust was sought on the basis of mistake, the Minnesota Court of Appeals "rejected the argument that *Eriksen* helped the beneficiaries' position because that case had been premised on the notion that both parties had contributed to a home, even though it had been titled in one of their names, and it would be unjust to deprive one of the parties of her interest."

*Farr*, 407 B.R. 343, citing *Eriksen*, 337 N.W.2d 671; *Lee v. Lake Area Bank*, 2000 WL 1376440 (Minn.App.2000).

The BAP concluded in *Farr* that "[t]he Eighth Circuit affirmed the *Graphics Technology* decision, expressly concluding that the panel in that case 'properly ana-lyzed the issues and properly applied Minnesota law.' " *Farr*, 407 B.R. 343, citing *Graphic Technologies*, 113 Fed. Appx. 734, 736. "Moreover, in *In re MJK Clearing, Inc.*, the Eighth Circuit held, as did the *Graphics Technology* panel, that, under Minnesota law (namely, *Henderson v. Murray*), a party seeking to impose a constructive trust must prove that the party holding the disputed property obtained such property 'by fraud, by bad faith, or by other improper means.' " *Farr*, 407 B.R. 343, citing *In re MJK Clearing*, 371 F.3d at 401.

The case here is one in which the property is agreed by the parties to be jointly owned despite the title. There is no dispute that Brown and Dibley openly believe and expressly define themselves to hold equal ownership interests in the property as tenants in common. Moreover, Brown contributed to the acquisition and maintenance of the property, since 1998, and continues to do so. Even though the property is presently titled in only Dibley's name, it would be unjust to deprive Brown of his ownership interest in the property, and disallowing the homestead exemption would do just that. All other variables aside, Dibley retaining an undivided whole interest under these circumstances would constitute an unconscientious manner of obtaining exclusive title, by taking advantage of her partner relationship with Brown. Accordingly, the trustee's objection must be overruled and the exemption allowed.

## III. DISPOSITION

IT IS HEREBY ORDERED:

---

veyed his interest in real estate to his wife, with the verbal understanding that the actual ownership should nevertheless remain with him); *Thompson v. Nesheim*, 280 Minn. 407, 159 N.W.2d 910 (husband transferred proper-ty to his second wife in an attempt to shield it from his first wife, with the promise from the second wife that they shared the property fifty-fifty).

1. The trustee's objection the claimed exemption is OVERRULED; and

2. The homestead exemption claimed by the debtor is ALLOWED.  BY THE COURT: